UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDOZ, INC., *et ano.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED THERAPEUTICS CORP., *et ano.*,<br><br>        Defendants. | Civil Action No.: 19-cv-10170<br><br>**OPINION AND ORDER OF THE SPECIAL DISCOVERY MASTER REGARDING PLAINTIFFS' ASSERTION OF MEDIATION PRIVILEGE** |

**LINARES, J.**

This matter comes before the Special Master following the January 25, 2021 Opinion and Order Regarding Defendant's Request for Settlement Related Discovery [ECF Docket 271] by way of a letter brief dated March 15, 2021 ("Motion") from counsel for Defendant United Therapeutics Corporation ("UTC") requesting discovery relating to Plaintiffs' settlement negotiations with defendant Smiths Medical ASD, Inc. ("Smiths"). The Special Master has reviewed the submissions, including the March 22, 2021 Response from Plaintiffs Sandoz, Inc., and Raregen, LLC, and the relevant controlling law. For the reasons set forth below, the Special Master makes the following findings and determinations, and rules as follows.

## I. <u>INTRODUCTION</u>

The Special Master presumes that the parties are familiar with the facts surrounding the underlying action and claims. Accordingly, the Special Master will only recite the relevant procedural and factual background necessary to dispose of the dispute at hand.

In December 2019, Plaintiffs and defendant Smiths agreed to mediate their claims. An in-person mediation session was held on January 31, 2020 with Hon. Faith Hochberg, U.S.D.J. (ret.) serving as the mediator. On November 6, 2020, Plaintiffs and Smiths signed a settlement term sheet.

UTC made a previous application to the Special Master seeking discovery relating to the settlement negotiations between Plaintiffs and Smiths that resulted in the Special Master's January 21, 2021 Order. That Order directed Plaintiffs to prepare and serve a privilege log in accordance with F.R.C.P. 26 identifying the documents claimed to protected from disclosure by the mediation privilege. The Order also directed Plaintiffs to request that the mediator prepare a statement describing the nature and extent of the mediator's involvement in settlement discussions between Plaintiffs and Smiths after the in-person mediation conducted in January 2020.

The mediator provided a statement dated February 2, 2021 (Exhibit A to UTC's Motion). Plaintiffs also provided a mediation privilege log (Exhibit B to UTC's Motion). Thereafter, the parties met and conferred regarding UTC's challenges to the privilege log.

In this current application, Defendant UTC seeks discovery of approximately 491 email communications between Plaintiffs and defendant Smiths Medical for the period between July 30, 2020 and January 29, 2021.

## II. DISCUSSION

In the January 21, 2021 Order, the Special Master explained that the question as to whether the mediation privilege applies turns on whether the settlement negotiations "have a clear nexus to the mediation." Documents created after the mediation may still be protected by the mediation privilege if they were prepared for or in furtherance of the mediation, or

UTC seeks discovery of email communications between Plaintiffs and Smiths during the period of July 30, 2020 - January 29, 2021.  UTC argues that the communications during this time period did not involve the active participation of the mediator and are not connected to the mediation -  thus, they are not privileged.  UTC points to the privilege log prepared by Plaintiffs and the mediator's statement that show that the mediator was not a party to the communications during the time period at issue.

Plaintiffs argue that these communications are protected from disclosure by the mediation privilege because they have a direct nexus to the mediation.  Plaintiffs assert that the settlement negotiations and exchange of drafts in the months leading up to the November 6, 2020 term sheet, and the continued negotiations in converting those terms into a final long-form settlement agreement were conducted pursuant to the mediation process put in place by Judge Hochberg. They argue that Judge Hochberg directed the parties to continue good faith negotiations to finalize the long form settlement with her continued involvement as mediator, and that if a dispute arose during that process, all agreed that Judge Hochberg would be the final arbiter.

It appears that the mediator continued to communicate with the parties after the in-person mediation in January 2020, including making a recommendation to the parties in June 2020. There are only a few emails during the challenged time period (7/30/2020-1/29/2021), however, that included the mediator (e.g., emails dated 11/12/20 and 1/29/21). Nonetheless, the mere fact that the mediator may not have been copied on emails between the parties during that time period does not necessarily mean that those emails were not connected to or prepared in furtherance of the mediation process.  Without a review of the emails in question, it is unclear on this record whether the challenged email communications have a sufficient nexus to the mediation process.

In light of the well-established and important confidentiality interests protected by the mediation privilege, the Special Master holds that an in camera review of the challenged emails is necessary in order to determine whether the mediation privilege applies to protect the email communications from disclosure.

### III.   ORDER

For the foregoing reasons, it is on this 13th day of May 2021,

**ORDERED** that, within 5 days, Plaintiffs shall submit copies of the approximately 491 emails to the Special Master only for in camera review, along with a word version of their privilege log.

**SO ORDERED**.

　　　　　　　　　　　　　　　　　　　　  /s/ *Jose L. Linares*
　　　　　　　　　　　　　　　　　　　　Hon. Jose L. Linares, U.S.D.J. (Ret.)