# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDOZ, INC., *et ano.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED THERAPEUTICS CORP., *et ano.*,<br><br>Defendants. | Civil Action No.: 19-cv-10170<br><br>**OPINION AND ORDER OF THE SPECIAL DISCOVERY MASTER REGARDING IN CAMERA REVIEW OF EMAILS ON PLAINTIFFS' MEDIATION PRIVILEGE LOG** |

**LINARES, J.**

This matter comes before the Special Master following the May 15, 2021 Opinion and Order of the Special Master Regarding Plaintiffs' Assertion of Mediation Privilege. Defendant United Therapeutics Corporation ("UTC") had previously requested discovery relating to Plaintiffs' settlement negotiations with Defendant Smiths Medical ASD, Inc. ("Smiths"). Plaintiffs and Smiths had argued that the negotiations were protected from disclosure by the mediation privilege. The Special Master previously held that *in camera* review of the challenged emails was necessary in order to determine whether the mediation privilege applies to protect the email communications from disclosure. The Special Master has now reviewed the approximately 491 email communications on Plaintiffs' privilege log, as well as the relevant controlling law. For the reasons set forth below, the Special Master holds that the email communications on Plaintiffs' privilege log are protected from disclosure by the mediation privilege.

## I. INTRODUCTION

The Special Master presumes that the parties are familiar with the facts surrounding the underlying action and claims. Accordingly, the Special Master will only recite the relevant procedural and factual background necessary to dispose of the dispute at hand.

In December 2019, Plaintiffs and Defendant Smiths agreed to mediate their claims. An in-person mediation session was held on January 31, 2020 with Hon. Faith Hochberg, U.S.D.J. (ret.) serving as the mediator. After the in-person mediation, the mediator continued to be involved in settlement discussions with the parties by email and telephone. On June 30, 2020, the mediator made a settlement recommendation to the parties ("Recommendation"). On November 6, 2020, Plaintiffs and Smiths signed a settlement term sheet ("Term Sheet") and then continued to negotiate a long-form settlement agreement. When a dispute arose in January 2021 regarding the long-form settlement agreement, the parties submitted that dispute to the mediator to resolve.

Previously, UTC made an application to the Special Master seeking discovery relating to the settlement negotiations between Plaintiffs and Smiths. As a result, the Special Master directed Plaintiffs to prepare and serve a privilege log in accordance with Rule 26 of the Federal Rules of Civil Procedure identifying the documents claimed to protected from disclosure by the mediation privilege. (*See* January 25, 2021 Opinion and Order Regarding Defendant's Request for Settlement Related Discovery (ECF No. 271)). That Order also directed Plaintiffs to request that the mediator prepare a statement describing the nature and extent of the mediator's involvement in settlement discussions between Plaintiffs and Smiths after the in-person mediation conducted in January 2020.

Plaintiffs provided a mediation privilege log and the mediator provided a statement dated February 2, 2021. After the parties met and conferred, Defendant UTC challenged approximately 491 communications and documents between Plaintiffs and Defendant Smiths for the period between July 30, 2020 and January 29, 2021 on Plaintiffs' privilege log (SM PL 152-643). As directed by the May 13, 2021 Order of the Special Master, Plaintiffs then produced the 491 documents for *in camera* review. During the course of that *in camera* review, the Special Master requested additional documents from the Plaintiffs' Privilege Log in order to provide additional context for some of the documents being reviewed.

## II. DISCUSSION

The general rule is that documents prepared for and presented to a mediator are confidential and protected from disclosure. Local Civil Rule 301.(e)(5) states:

> All information presented to the mediator shall be deemed confidential unless requested otherwise and shall not be disclosed by anyone, including the mediator, without consent, except as necessary to advise the Court of an apparent failure to participate . . .No statements made or documents prepared for mediation shall be disclosed in any subsequent proceeding or construed as an admission.

Documents created after the mediation may still be protected by the mediation privilege if they were prepared for or in furtherance of the mediation. The mere fact that the mediator may not have been copied on communications between the parties does not necessarily mean that those communications or documents were not connected to or prepared in furtherance of the mediation process.

Here, UTC is challenging email communications between Plaintiffs and Smiths during the period of July 30, 2020 - January 29, 2021 that did not include the mediator but, which Plaintiffs argue, are connected to the mediation. The question as to whether the mediation privilege applies thus turns on whether the settlement negotiations during this time period "have

3

a clear nexus to the mediation." *US Fid. & Guar Co. v. Dick Corp.*, 215 F.R.D. 503 (W.D.Pa 2003) (interpreting Pennsylvania's statutory mediation privilege but nonetheless instructive).

In *Dick Corp.*, the parties agreed to mediation with a professional mediator who conducted one session on November 30, 2000. *Dick Corp.*, 215 F.R.D. at 505. The session did not result in an agreement. *Id*. After the single mediation session, the parties continued to discuss a settlement on their own and kept the mediator apprised. *Id.* Sometime between late December, 2000 and February, 2001, the parties reached a settlement agreement. *Id.* The mediator had no further contact with the parties involving settlement negotiations or documents related to the settlement after December 20, 2001. *Id.* The parties entered into a formal settlement agreement on or before February 2, 2002. *Id.*

The Court held that the settlement agreement was discoverable because communications purely between the parties and not involving the "active participation" of the mediator are not privileged. In so holding, however, the Court noted the following specific facts:

> [The mediator's] declaration does not indicate that he had any significant involvement in helping to reach the ultimate terms and structure of the settlement reached by the parties. Instead, his declaration confirms the limited nature of his involvement after the November 20, 2000 failed mediation attempt. We might have quite a different view had the evidence indicated that the parties and Mr. Green explicitly agreed upon a mediation process which contemplated one face to face meeting on November 20th and a number of follow up sessions by telephone. There is nothing in the evidence to support the existence of such an agreement.

*Id.* at 506. The Court concluded that:

> discussions among parties outside the presence of the mediator and not occurring at a mediation proceeding are not privileged. Where the mediator has no direct involvement in the discussions and where the discussions were not designated by the parties to be a part of an ongoing mediation process, the rationale underlying the mediation privilege (i.e., that confidentiality will make the mediation more effective) is not implicated. The mere fact that

4

> discussions subsequent to a mediation relate to the same subject as the mediation does not mean that all documents and communications related to that subject are "to further the mediation process" or prepared for the purpose of, in the course of, or pursuant to mediation.

*Id.*

The Court also looked to federal case law construing the federal mediation privilege for guidance:

> In *Folb v. Motion Picture Indus. Pension & Health Plans,* 16 F.Supp.2d 1164, 1180 (C.D.Cal.1998), the court held that holding settlement discussions and exchanging related documents were not protected by the federal mediation privilege simply because they occurred, or were created, following a mediation. [S]ubsequent negotiations between the parties ... are not protected even if they include information initially disclosed in the mediation. A contrary rule would permit a party to claim the privilege with respect to any settlement negotiations so long as the communications took place following an attempt to mediate the dispute.

*Id*. at 506-07.

The Court then discussed circumstances under which documents created after the mediation may be privileged and noted that:

> We believe that documents created subsequent to the mediation process may be protected by the privilege to the extent that they have a clear nexus to the mediation. These would include drafts of settlement proposals agreed upon at mediation.
>
> However, under the facts of the instant case, plaintiffs have failed to establish any nexus between the subsequently created documents and the mediation process. The documents in question cannot be tied to the November 20th mediation or to any subsequent activity by the mediator. There is no evidence of any sort of approval of the mediator or suggestions by him as to how to resolve disputed points in the ongoing exchange of settlement proposals following his initial involvement.
>
> . . . we interpret "the language of Pennsylvania's mediation privilege as extending its protection to mediator-brokered settlements, but not to settlements that were simply reached following a mediation. Thus, there must be a sufficient nexus

> between the mediator's involvement with the parties and the settlement reached by the parties. That nexus has not been established with regard to the Settlement Agreement.

*Id.* at 507.

Here, UTC seeks discovery of email communications between Plaintiffs and Defendant Smiths during the period of July 30, 2020 to January 29, 2021. UTC argues that the communications during this time period did not involve the active participation of the mediator and are not connected to the mediation - thus, they are not privileged. UTC points to the privilege log prepared by Plaintiffs and the mediator's statement that show that the mediator was not a party to the communications at issue during the time period at issue.[1]

Plaintiffs argue that these communications are protected from disclosure by the mediation privilege because they have a direct nexus to the mediation. Plaintiffs assert that the settlement negotiations and exchange of drafts in the months leading up to the November 6, 2020 Term Sheet and the continued negotiations in converting those terms into a final long-form settlement agreement were conducted pursuant to the mediation process put in place by Judge Hochberg. They argue that Judge Hochberg directed the parties to continue good faith negotiations to finalize the long form settlement with her continued involvement as mediator, and that if a dispute arose during that process, all agreed that Judge Hochberg would be the final arbiter.

Upon reviewing the email communications at issue betweenJuly 30, 2020 and January 29, 2021, and the additional emails requested to provide additional context, the Special Master agrees with Plaintiffs' position.

---

[1] In a letter dated July 6, 2021, UTC asserts that during the course of expert discovery, Plaintiffs' expert relied on the timeline of Plaintiffs' negotiations with Smiths and that, as a result, the mediation privilege does not apply. The Special Master is not persuaded that this argument has any bearing on the issue of whether or not the mediation privilege applies.

First, there are several emails on Plaintiffs' Privilege Log during this time period that were sent by Judge Hochberg's office (*see* SM PL 167-170, 203-205, 641).  These emails are clearly privileged.  The remainder of the challenged emails and documents on Plaintiff Privilege Log also have a clear nexus to the mediation and are thus privileged.

After the in-person mediation session in January 31, 2020, the mediator continued to be involved in settlement discussions with the parties by email and telephone.  On June 30, 2020, the mediator made a settlement recommendation to the parties ("Recommendation").  That Recommendation recognized that some aspects of the Recommendation had not yet been discussed by the business representatives of each party, and thus would need to be discussed and negotiated by the parties.  The Recommendation also contemplated that all terms agreed upon would be memorialized in a final settlement agreement.  Furthermore, the Recommendation suggested that if disagreements arose during the efforts of the parties to memorialize the settlement, the mediator would decide those disputes as a binding arbitrator.  Ultimately, the parties agreed to this dispute resolution process.

After receiving the mediator's Recommendation, over the course of the next four months, the parties communicated with each other directly and continued to negotiate the terms of the proposal that the mediator had presented to the parties in Judge Hochberg's Recommendation.  Those continuing discussions ultimately led to the November 6, 2020 Term Sheet.  Thereafter, the parties negotiated the long-form settlement agreement.  Several disputes arose during the course of those negotiations, and, pursuant to the agreement with the mediator, in January 2021, the parties submitted those disputes to the mediator to decide.

Here, unlike in *Dick Corp.*, the mediator had significant involvement in helping to reach the ultimate terms and structure of the settlement reached by the parties.  This was not a case

7

where a settlement was simply reached following a mediation. The mediator's Recommendation laid out the parameters of the parties' subsequent discussions and set the parties on a course that led to the Term Sheet and the negotiation of a long-form settlement agreement. Those subsequent discussions and communications were designated by the parties to be a part of the ongoing mediation process. The mere fact that the mediator was not copied on email communications between the parties during this time does not mean that those communications were not in furtherance of the mediation.

To the contrary, the evidence clearly indicates that the parties and the mediator agreed upon a mediation process which contemplated the mediator's continued involvement. When a dispute arose regarding the parties' efforts to memorialize the terms of the settlement in January 2021, the parties submitted those disputes to the mediator to decide. Hence, the emails and documents exchanged between the Plaintiffs' and Defendant Smiths during the challenged time period on Plaintiff's Privilege Log have a clear nexus to the mediation.

Accordingly, the Special Master holds that the emails at issue on Plaintiffs' Privilege Log (SM PL 152-643) are protected from disclosure by the mediation privilege.

### III.   ORDER

For the foregoing reasons, it is on this 13th day of October 2021,

**ORDERED** that UTC's motion to compel Plaintiffs to produce settlement communications between Plaintiffs and Smiths during the period of July 30, 2020 - January 29, 2021, identified as documents SM PL 152-643 on Plaintiffs Privilege Log, is **DENIED**.

**SO ORDERED**.

                                                                                  __/s/ *Jose L. Linares*_____

                                                                                   Hon. Jose L. Linares, U.S.D.J. (Ret.)

ME1 37891790v.1