**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky
*New Jersey Resident Partner*
Michael R. Darbee
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
SOrlofsky@BlankRome.com
MDarbee@BlankRome.com

**WILLIAMS & CONNOLLY LLP**
Edward J. Bennett *(pro hac vice)*
Edward C. Barnidge *(pro hac vice)*
Jonathan B. Pitt *(pro hac vice)*
Adrienne E. Van Winkle *(pro hac vice)*
680 Maine Avenue S.W.
Washington, DC 20024
Telephone: (202) 434-5083
Facsimile: (202) 434-5029
EBennett@wc.com
EBarnidge@wc.com
JPitt@wc.com
AVanwinkle@wc.com

*Attorneys for Defendant United Therapeutics Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SANDOZ INC.,<br><br>                         Plaintiff,<br><br>      v.<br><br>UNITED THERAPEUTICS CORPORATION,<br><br>                        Defendant. | Civil Action No. 2:19-cv-10170-BRM-JSA |

**UNITED THERAPEUTICS CORP.'S MOTION FOR STAY OF**
**EXECUTION OF JUDGMENT PENDING APPEAL WITHOUT BOND**

Defendant United Therapeutics Corporation ("UTC"), respectfully asks this Court to stay the execution of its Judgment pending appeal without requiring UTC to provide a supersedeas bond under Federal Rule of Civil Procedure 62(b). UTC is a U.S.-based publicly-traded company with over $2 billion in annual revenue and well over $4 billion of cash or equivalents on hand, and any judgment could be paid within approximately ten business days. No bond is necessary to secure the Judgment. UTC has conferred with Sandoz Inc. ("Sandoz" or "Plaintiff") regarding this Motion and Sandoz has advised it opposes the motion.

## BACKGROUND

On April 29, April 30, and May 1, 2024, this Court held a bench trial to determine damages on Sandoz's breach of contract claim. Following post-trial briefing and closing arguments from the Parties, the Court issued its Findings of Fact and Conclusions of Law on September 6, 2024. Dkt. Nos. 503, 504. On October 7, 2024, the parties submitted proposed final judgments. *See* Dkt. Nos. 506, 507, 508. Reserving all rights, UTC proposed a judgment of $65,119,925, while Sandoz's proposed a judgment of $80,890,763, both including prejudgment interest.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 62, "a party may obtain a stay" of a monetary judgment "by providing a bond or other security." Fed. R. Civ. P. 62(b). A stay under Rule 62(b) "takes effect when the court approves the bond or other

security." Fed. R. Civ. P. 62(b) advisory committee's note to 2018 amendment. The stay "remains in effect for the time specified in the bond or other security." *Id.*

A district court is also empowered to waive the bond requirement where appropriate. *See Hurley v. Atlantic City*, 944 F. Supp. 371, 374 (D.N.J. 1996) (citing *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988)); *see also Montalvo v. Larchmont Farms, Inc.*, 2011 WL 6303247, at *1 (D.N.J. Dec. 15, 2011) ("[D]istrict courts within the Third Circuit have found that they have discretion under [Fed. R. Civ. Proc. 62] to waive the bond requirement in whole or in part."). In determining whether to waive the bond requirement, courts consider five factors, sometimes referred to as the five *Dillon* factors: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment…; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money…; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position…." *Munoz v. City of Philadelphia*, 537 F. Supp. 2d 749, 751 (E.D. Pa. 2008) (quoting *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988) (quotation marks omitted)) (staying execution of judgment without requiring bond); *Sabre GLBL, Inc v. Shan*, 2018 WL 4350279, at *2 (D.N.J. Sept. 12, 2018) (noting that "courts in this district"

2

apply "the *Dillon* factors" in this context).*

# ARGUMENT

## I. THE COURT SHOULD WAIVE THE BOND REQUIREMENT

*Dillon* factors 1 through 4 all weigh in favor of granting UTC's request for a stay of execution of the Judgment without requiring UTC to file a supersedeas bond. Factor 5 is irrelevant, as UTC's financial situation is anything but "precarious." As is clear from the trial record and the attached Declaration of James Edgemond ("Ex. A"), UTC undoubtedly has sufficient funds to pay a judgment within the $65 million to $81 million range submitted by the parties. And in the event the Judgment is sustained on appeal, Sandoz will be able to promptly collect the amount of the Judgment from UTC.

**The Complexity of the Collection Process (First *Dillon* Factor).** The process for collecting on the Judgment were it sustained on appeal would not be complex. As of June 30, 2024, UTC maintains approximately $1.36 billion of cash

---

* A party need not satisfy the traditional four-factor test for a stay of injunctive relief pursuant to Fed. R. Civ. P. 62(c) when seeking a stay of a monetary judgment under Fed. R. Civ. P. 62(b). *See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 1992 WL 114953, at *1 (E.D. Pa. May 18, 1992) (declining to apply the four-factor test because "[nearly] every court that has applied the four-factor test in the Rule 62 context has done so upon a motion to stay an injunction … not a motion to stay a monetary judgment …."); *ESIP SERIES 1, LLC v. Doterra Int'l, LLC*, 2023 WL 4206387, at *4 (D. Utah June 27, 2023) (same); *Compania de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua, S.A.B. de C.V.*, 2019 WL 8223560, at *2 (D. Colo. May 21, 2019) (same).

3

on hand and cash equivalents, which could readily be used to pay the Judgment in this case if necessary after an appeal. Ex. A. As explained in the Declaration submitted by UTC's Chief Financial Officer, James Edgemond, in support of this Motion, UTC could pay the Judgment via wire transfer within 10 business days upon receiving wire instructions from Sandoz if the Judgment is sustained following conclusion of all appeals. *Id.*

**Amount of Time To Obtain A Judgment After Its Affirmed On Appeal (Second *Dillon* Factor).** UTC estimates that it would take approximately 10 business days to complete a wire transfer of the Judgment amount if it is sustained following conclusion of all appeals. Ex. A.

**This Court Should Have a High Degree of Confidence in UTC's Availability of Funds to Pay the Judgment (Third *Dillon* Factor)**. In cases where there is "no question that [a party] would be able to receive the amount of the judgment in their favor," it is appropriate for the bond requirement to be waived. *Montalvo.*, 2011 WL 6303247, at *3 (citing *In re Diet Drugs*, 582 F.2d 524, 552 (3d Cir. 2009); *Arban v. West Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003); *Munoz v. City of Philadelphia*, 537 F. Supp. 2d 749, 751-52 (E.D. Pa. 2008)).

Here, there is no question that Sandoz "will be able to obtain full satisfaction from [UTC]" even without the posting of a bond. *Munoz*, 537 F. Supp. 2d at 752. Mr. Edgemond explains that UTC's 2023 total revenue is $2,327.5 million, which is

4

an amount approximately thirty-five times greater than UTC's proposed judgement amount of approximately $65 million. Ex. A. And so far, through the end of the second quarter of 2024, Mr. Edgemond states that UTC's 2024 total revenue is $1,392.6 million, which is an amount approximately twenty-one times greater than UTC's proposed judgment amount of approximately $65 million. *Id.* As of June 30, 2024, Mr. Edgemond states that UTC maintains approximately $4.3 billion of cash on hand, including marketable investments, which is an amount approximately sixty six times greater than UTC's proposed judgment amount of approximately $65 million. *Id.* Based on UTC's revenue and cash on hand, this Court can have a high degree of confidence that UTC has the financial resources available for prompt payment of the full Judgment amount should that payment become necessary. *See, e.g., EPAC Technologies, Inc. v. HarperCollins Christian Publishing, Inc.*, 2019 WL 13500307, at *2 (M.D. Tenn. Feb. 26, 2019) (waiving the bond requirement because "the Court believes that gross revenue over twenty times greater than the judgment" provides assurances that defendant has the "financial resources available for prompt payment of the full judgment amount should that payment become necessary").

**UTC's Ability to Satisfy the Judgment & UTC's Financial Situation (Fourth & Fifth *Dillon* Factors).** Relatedly, in cases where a party's "ability to pay the judgment, based on its financial revenue, is so plain that the cost of the bond would be a waste of money,'" a court will grant a motion for stay of execution of the

5

judgment and waive the bond requirement. *EPAC Technologies, Inc.*, 2019 WL 13500307, at *2 (quoting *Abran*, 345 F.3d at 409). And so long as a party's interest is "adequately secured and the cost of a bond would be a waste of money," a court will similarly grant a party's motion for a stay without posting a supersedeas bond. *Warren v. Kemp*, 2022 WL 3131932, at *1 (E.D. Ark. July 7, 2022).

Here, UTC's ability to pay the Judgment is so plain that the cost of a bond would be a waste of money. *Munoz*, 537 F.Supp.2d at 752 (explaining that if "there is no basis to think that prompt payment will not take place should the judgment be sustained on appeal," then "requir[ing] a bond … would be a waste of [a party's] money"). UTC's financial health is evident from its public disclosures: In 2023, UTC earned $2,327.5 million in total revenue, which is an amount approximately thirty-five times more than UTC's proposed judgment amount of approximately $65 million. Ex. A. Again, as of June 30, 2024, UTC has approximately $1.36 billion cash or cash equivalents on hand. *Id*. And lastly, Mr. Edgemond's Declaration makes clear that UTC's excellent financial health and stability ensures that if this Court's Judgment is affirmed on appeal that Sandoz's ability to easily collect the Judgment amount is not in doubt if this Court waives the bond requirement. *Id.*

In sum, this Court can be "confident" that UTC has the "availability of funds to pay the judgment" should it be affirmed on appeal. *Munoz*, 537 F. Supp. 2d at 571.

## **CONCLUSION**

For the reasons above, this Court should waive the supersedeas bond requirement and stay the execution of the Judgment pending appeal.

Dated: October 29, 2024

/s/ Stephen M. Orlofsky

| | |
|---|---|
| **BLANK ROME LLP** | **WILLIAMS & CONNOLLY LLP** |
| *A Pennsylvania LLP* | Edward J. Bennett *(pro hac vice)* |
| Stephen M. Orlofsky | Edward C. Barnidge *(pro hac vice)* |
| *New Jersey Resident Partner* | Jonathan B. Pitt *(pro hac vice)* |
| Michael R. Darbee | Adrienne E. Van Winkle *(pro hac vice)* |
| 300 Carnegie Center, Suite 220 | 680 Maine Avenue S.W. |
| Princeton, NJ 08540 | Washington, DC 20024 |
| Telephone: (609) 750-2646 | Telephone: (202) 434-5083 |
| Facsimile: (609) 897-7286 | Facsimile: (202) 434-5029 |
| SOrlofsky@BlankRome.com | EBennett@wc.com |
| MDarbee@BlankRome.com | EBarnidge@wc.com |
| | JPitt@wc.com |
| | AVanWinkle@wc.com |

*Attorneys for Defendant United Therapeutics Corporation*