<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SANDOZ INC. and RAREGEN, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED THERAPUTICS CORP., <br><br> Defendant. | Case No. 2:19-cv-10170 (BRM) (JSA) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant United Therapeutics Corporation's ("UTC") Motion for Stay of Execution of Judgment Pending Appeal Without Bond. (ECF No. 509.) Plaintiff Sandoz Inc. ("Sandoz") filed an Opposition to the Motion (ECF No. 515), and UTC filed a Reply (ECF No. 517). Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, UTC's Motion for Stay of Execution of Judgment Pending Appeal Without Bond (ECF No. 509) is **DENIED.**

**I.    BACKGROUND**

This Court discussed the full factual background of this case in a prior opinion. (ECF No. 503.) For that reason, the Court will discuss only the facts that pertain to this Motion.

This Motion is part of a lawsuit initially filed on April 16, 2019. (ECF No. 1.) On March 30, 2022, the Court granted UTC's Motion for Summary Judgment on Counts I through VI of the Amended Complaint and granted Sandoz's Motion for Partial Summary Judgment on Count VII as to liability. (ECF No. 383.) The Court held a three-day bench trial beginning on April 29, 2024,

and concluding on May 1, 2024, on the amount of damages owed to Sandoz for Count VII. Before the damage award was determined, on October 29, 2024, UTC filed a Motion to Stay Execution of Judgment Pending Appeal without Bond. (ECF No. 509.) On November 1, 2024, the Court ordered a Judgment of $70,600,000 in favor of Sandoz against UTC.[1] (ECF Nos. 510, 511.) On the same day, UTC filed its Notice of Appeal. (ECF No. 512.) On November 11, 2024, Sandoz filed its Notice of Appeal. (ECF No. 513.) On November 13, 2024, Sandoz filed an Opposition to UTC's Motion. (ECF No. 515.) On November 20, 2024, UTC filed a Reply. (ECF No. 517.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 62(b) states a "party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security[.]" Fed. R. Civ. P. 62(b). The 2018 Amendments to the Rule provide that 62(b) "carries forward in modified form the supersedeas bond provisions of Former Rule 62(d). . . . The new rule's text makes explicit the opportunity to post security in a form other than a bond." *Id.* District courts are given discretion in determining whether to waive the bond requirement. *See In re Diet Drugs*, 582 F.3d 524, 552 (3d Cir. 2009) ("Although Fed. R. Civ. P. 62(d) states that '[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond,' courts may forego that requirement when there are other means to secure the judgment creditor's interests."); *Hurley v. Atl. City*, 944 F. Supp. 371, 374 (D.N.J. 1996) (citing *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988)); *see, e.g.*, *Arban v. W. Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (stating Rule 62(d), which speaks to stays granted as a matter of right, does not inhibit district courts from granting stays pursuant to their

---

[1] The time to post a bond was set to expire on December 1, 2024. A status conference via telephone was held on November 27, 2024 in anticipation of this deadline. Both parties consented to an extension of the automatic stay of proceedings to enforce the Court's November 1, 2024 Judgment (ECF No. 511) to December 15, 2024 pursuant to Federal Rule of Civil Procedure 62(a). (ECF No. 525).

discretion); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980) (same); *see also Montalvo v. Larchmont Farms, Inc.*, 2011 WL 6303247, at *1 (D.N.J. Dec. 15, 2011) ("[D]istrict courts within the Third Circuit have found that they have discretion under Rule 62(d) to waive the bond requirement in whole or in part.") (citing *Church & Dwight Co. v. Abbott Labs.*, 2009 WL 2230941, at *14 (D.N.J. July 23, 2009)).

"Courts exercise this discretion 'where there exists an alternative means of securing the judgment' and there 'are exceptional circumstances.'" *Ingenieria, Maquinaria Y Equipos de Colombia S.A. v. Aviation Tech. & Turbine Serv., Inc.*, Civ. A. No. 17-3624, 2018 WL 10149715, at *1 (D.N.J. Apr. 9, 2018) (internal citations omitted). Exceptional means can be determined via the *Dillon* factors, as set forth in *Dillon v. City of Chicago*, 866 F.2d at 904–05. *See Ingenieria*, 2018 WL 10149715, at *2; *Hilburn v. Bayonne Parking Auth.*, Civ. A. No. 07-5211, 2013 WL 1721648, at *2 (D.N.J. Apr. 19, 2013); *Grant v. Omni Health Care Systems of NJ, Inc.,* No. 08–306, 2010 U.S. Dist. LEXIS 82963 at *2 (D.N.J. Aug. 13, 2010); *Church*, 2009 WL 2230941 at *41–42. In addition, courts have held that, beyond needing an alternative means to secure the judgment, the posting of the bond must also be impossible or impracticable. *See Ingeniera*, 2018 WL 10149715 at *2.; *Hilburn*, WL 1721648, at *2 ("To show waiver of bond is appropriate, 'it is the appellant's burden to demonstrate objectively that posting a full bond is impossible or impracticable; likewise it is the appellant's duty to propose a plan that will provide adequate (or as adequate as possible) security for the appellee.'") (citing *AMG Nat'l Trust Bank v. Ries*, Civ. A.

No. 06–4337, 2008 WL 2312352, at *1 (E.D. Pa. June 4, 2008), *aff'd in part and remanded*, 319 F. App'x 90 (3d Cir. 2008)).

There are five factors courts rely upon in determining whether to waive the bond requirement:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment . . . ; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money . . . ; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.
> . . .

*Dillon*, 866 F.2d at 904–05; *see Sabre GLBL, Inc. v. Shan*, 2018 WL 4350279, at *2 (D.N.J. Sept. 12, 2018) (noting "courts in this district" apply "the *Dillon* factors" in this context).

### III. DECISION

UTC argues the first four *Dillon* factors have been met and "weigh in favor of granting UTC's request" to avoid filing a supersedeas bond. (ECF No. 509 at 3.) UTC claims the fifth factor is irrelevant as its "financial situation is anything but 'precarious,'" and it "undoubtedly has sufficient funds to pay a judgment within the $65 million to $81 million range submitted by the parties." (*Id.*) Further, UTC claims "in the event the Judgment is sustained on appeal, Sandoz will be able to promptly collect the amount of the Judgment[.]" (*Id.*)

4

Sandoz disagrees, stating "UTC's confidence in its *current* ability to pay . . . is insufficient to waive the bond requirement." (ECF No. 515 at 2.) Sandoz contends there are not "exceptional circumstances" present, nor is it impossible or impracticable for UTC to post the bond. (*Id.* at 2–3.) Sandoz further argues many of UTC's citations to cases where courts found waiver appropriate involve "either a government entity, an agent potentially indemnified by a government entity, an agent of the government, or an entity jointly liable with a government entity" as the moving party, making them inapposite to the situation at hand. (*Id.* at 4–5.) Finally, Sandoz claims UTC's motion should be denied because it did not present any "alternative means" that would be used in lieu of a bond. (*Id.* at 6.)

While UTC has proven some of the *Dillon* factors, namely 1, 2, and 5, tilt in its favor, it has failed to adequately convince the Court that 3 and 4 have been met, nor has it explained how posting the supersedeas bond would be impossible or impracticable. Likewise, it has failed to provide a security option other than the bond, *i.e.*, no "alternative means." This Court is convinced the complexity of the collection process and the amount of time it would take Sandoz to obtain the judgment are not of issue here. UTC affirms it has more than enough cash or cash equivalents to pay the Judgment as necessary, and it can wire the money in approximately 10 business days. (ECF No. 509 at 4–5.) UTC's Chief Financial Officer supports such information in his Declaration to this Court. (*Id.*) However, while UTC assuredly has funds available to pay the Judgment today, the Court does not have a high enough degree of confidence in its funds for the future. UTC states its "financial health [is] evident from its public disclosures," but what may happen to the company in the interim is yet to be determined. (ECF No. 509 at 6.)

While the company is currently successful, there is still much uncertainty in the marketplace, which provides concern especially for a pharmaceutical company given potential regulatory pressures and other changes impacting the industry that might occur during the appeal process. *See Leff v. First Horizon Home Loan*, 2007 WL 2572362, at *7 (D.N.J. Sept. 4, 2007) ("Even if Defendant is financially secure now, there is nothing to suggest that it will not be affected by volatility in the housing and mortgage industry."). It is also unknown what future lawsuits or judgments might drain UTC's finances in the interim. Moreover, mere solvency or strong reserves of cash have been found to be unavailing reasons for waiving the bond requirement. *See, e.g.*, *Tomasko v. Ira H. Weinstock, P.C.*, 2009 WL 613590, at *1 (M.D. Pa. Mar. 6, 2009) ("Defendants cannot show 'exceptional circumstances' simply by stating [they have] sufficient ability to satisfy the award."); *Blue Mountain Env't Mgmt. Corp. v. Chico Enter., Inc.*, 2005 WL 2304999, at *1 (W.D. Pa. Sept. 21, 2005) (determining debtor was a "substantial corporation" who would "be able to satisfy the judgment if defendants are unsuccessful on appeal" was not sufficient rationale for waiving the bond requirement); *Ryan v. Asbestos Workers Union Loc. 42 Pension Fund*, 2002 WL 87470, at *1 (D. Del. Jan. 22, 2002) (denying motion to stay without a bond despite finding defendant was both solvent and had assets of $38,000,000), *aff'd in part, vacated in part on other grounds and remanded by*, 27 F. App'x 100 (3rd Cir. 2002); *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 1991 WL 8890, at *2 (E.D. Pa. Jan. 24, 1991) (determining court had "to take whatever steps are necessary to protect plaintiff's right to have its judgments secured" no matter the "small risk . . . that defendants will be unable to pay[,]" despite being "mindful of defendant's present financial stability"), *aff'd in part, rev'd in part on other grounds*, 952 F.2d 715 (3rd Cir. 1991). Such a finding is also tied to the determination that UTC's ability to pay the Judgment at an undetermined moment in the future is not plain enough that the cost of a bond would be a waste of money.

6

Relatedly, the Court does not believe it would be impossible or impracticable for UTC to post the supersedeas bond. As Sandoz has pointed out, if "UTC is as financial stable as it claims" then the bond should present no problem. (ECF No. 515 at 5.) Indeed, UTC repeatedly emphasizes its current financial strength, certifying it not only has more than ample funds for the bond, but also that it "has worked with a surety agent, Chubb and is confident it can promptly secure a supersedeas bond in an amount set by the Court if the Court does not waive the bond requirement." (ECF No. 509-2 at 3.) Accordingly, denying the waiver should "present no great difficulty" for UTC. *See Leff*, 2007 WL 2572362, at *7 (declining to waive bond requirement where movant asserted it was in a "thriving business of providing mortgage-lending services"); *Church & Dwight Co. v. Abbott Labs.*, 2009 U.S. Dist. LEXIS 58067, at *52 (D.N.J. July 8, 2009) ("Abbott's financial strength demonstrates that it is not in a precarious financial situation. . . . If anything, Abbott has demonstrated that it would not be a financial hardship for it to post a bond."); *Ryan*, 2002 WL 87470, at *1 (finding defendant's assertion of $38,000,000 in assets proved it had "ample resources to post the required bond" instead of supporting its motion for a waiver of a bond); *see also Hilburn*, 2013 WL 1721648, at *3 ("Plaintiffs have also f[a]iled to . . . even argue[] that the bond requirement is impossible or impracticable.").

Finally, UTC has not offered any alternative means to posting the supersedeas bond. Conspicuously absent from its motion is any mention of a bond-alternative or other form of adequate security that would both satisfy this Court's need to protect Sandoz's right to collect the ultimate Judgment and fulfil the obligations of the Rule. (*See* ECF No. 509.) *See Hilburn*, 2013 WL 1721648, at *3 ("Plaintiffs have also f[a]iled to address whether an alternative means for securing the judgment exists."); *Transamerica Occidental Life Ins. Co. v. Total Sys., Inc.*, Civ. A. No. 08-1323, 2011 WL 2447520, at *3 (D.N.J. June 14, 2011) ("Defendants have . . . failed to address whether an alternative means for securing the judgment exists. . . . Accordingly, this Court find[s] that the supersedeas bond requirement should not be waived in this case."). In its Reply, UTC even directly addresses Sandoz's declaration that UTC "has made no assurances that it will provide any security for the judgment" (ECF No. 515 at 5) but fails to provide for any plan or alternate form of security to the supersedeas bond (ECF No. 517 at 3). Instead, UTC only reasserts its financial stability as being more than adequate security in and of itself. (*Id.*) As already discussed, UTC's current economic success is by no means guaranteed to continue in the future, and without an appropriate protection being put forth, this Court sees no reason to diminish Sandoz's future ability to collect the Judgment.

### IV. CONCLUSION

For the reasons set forth above, UTC's Motion to Stay Execution of Judgment Pending Appeal Without Bond (ECF No. 509) is **DENIED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE

Dated: December 6, 2024