**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky
*New Jersey Resident Partner*
Michael R. Darbee
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
SOrlofsky@BlankRome.com
MDarbee@BlankRome.com

**WILLIAMS & CONNOLLY LLP**
Edward J. Bennett *(pro hac vice)*
Edward C. Barnidge *(pro hac vice)*
Jonathan B. Pitt *(pro hac vice)*
Adrienne E. Van Winkle *(pro hac vice)*
680 Maine Avenue S.W.
Washington, DC 20024
Telephone: (202) 434-5083
Facsimile: (202) 434-5029
EBennett@wc.com
EBarnidge@wc.com
JPitt@wc.com
AVanwinkle@wc.com

*Attorneys for Defendant United Therapeutics Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SANDOZ INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED THERAPEUTICS CORPORATION,<br><br>Defendant. | Civil Action No. 2:19-cv-10170-BRM-JSA |

**UNITED THERAPEUTICS CORP.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO TAX COSTS**

## TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................3

**BACKGROUND** ...................................................................................................4

**ARGUMENT**........................................................................................................7

I. **UTC Is Overwhelmingly the Prevailing Party in This Action, and Therefore Is Entitled to Costs**...............................................................7

II. **UTC Seeks Appropriate Costs Related to Successfully Defending Plaintiffs' Non-Contract Claims**................................................11
   A.   Fees for Deposition Costs. ...............................................11
   B.   Fees for Witnesses...........................................................14

III. **In the Alternative, the Clerk Should Defer Ruling on Costs Until the Parties' Cross Appeals Are Decided**...................................................16

**CONCLUSION**...................................................................................................17

## INTRODUCTION

Defendant United Therapeutics Corporation ("UTC") prevailed on every claim asserted by Plaintiffs RareGen, LLC ("RareGen") and Sandoz, Inc. ("Sandoz") in their April 2019 Complaint (Dkt. No. 1), in which Plaintiffs accused UTC of anticompetitive and tortious conduct. After extensive discovery in 2019, UTC defeated RareGen's and Sandoz's motion for a preliminary injunction, and the Court determined that Plaintiffs were unlikely to succeed on their claims. Only at that point did Plaintiff Sandoz add a new claim for breach of contract based on a patent settlement with UTC. At summary judgment, UTC prevailed on *all six* of the claims asserted in Plaintiffs' initial Complaint, including the antitrust and tort claims and related demands for treble damages and other relief that drove this litigation for nearly three years. After all of RareGen's and 85% of Sandoz's claims were dismissed, Sandoz and UTC proceeded to trial on Sandoz's contract claim, and Sandoz received a judgment for less than half of the contract damages it sought.

As the prevailing party on the lion's share of the claims asserted and remedies sought by Sandoz, and *all* of the claims asserted and remedies sought by RareGen, UTC is entitled to the related costs pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54, and Local Civil Rule 54.1. Accordingly, UTC requests that the Clerk tax costs against Sandoz and RareGen in favor of UTC in the amount of $52,862.77. And as the entire matter is now before the Third Circuit on the parties'

3

cross appeals, UTC requests in the alternative that the Clerk defer any determination of the costs each party is entitled to until there is a final prevailing party, as deciding such issues now may require adjustment when the case concludes.

## BACKGROUND

Sandoz and RareGen brought this action against UTC and Smiths Medical ASD, Inc. ("Smiths") in April 2019. Dkt. No. 1. Plaintiffs initially asserted six claims against UTC: two federal antitrust claims (Counts I, II); three state law antitrust/unfair competition claims (Counts III, IV, V); and a state law tortious interference with prospective economic advantage claim (Count VI). *Id*. Plaintiffs requested a preliminary injunction, compensatory damages, treble damages, and attorneys' fees for these claims. *Id*. Plaintiffs' original Complaint did not include a claim for breach of contract.

Following expedited and extensive preliminary injunction- and antitrust-related discovery throughout 2019, including depositions of numerous fact and expert witnesses, Sandoz and RareGen formally moved for a preliminary injunction. Dkt. Nos. 49, 106. The Court denied Plaintiffs' request for a preliminary injunction in January 2020. Dkt. Nos. 168, 169, 170. Up to this point, Sandoz's contract claim was not part of the litigation. All discovery and costs expended before January 2020 relate *only* to the claims (and preliminary injunction hearing) on which UTC prevailed.

In March 2020, Sandoz amended its Complaint to add a claim for breach of contract. Dkt. Nos. 176-1, 178. Despite the Court having held that Plaintiffs did not have "a reasonable probability of eventual success" on their antitrust and other claims, Dkt. No. 170 at p. 36, Plaintiffs nonetheless persisted in pressing those non-contract claims. After nearly two years of additional discovery largely focusing on Plaintiffs' non-contract claims, UTC and Sandoz cross-moved for summary judgment in late 2021: UTC moved for summary judgment on all of Sandoz's claims, Dkt. Nos. 321–27, 329, and Sandoz moved only for partial summary judgment on its recently added claim for breach of contract, Dkt. Nos. 319, 320, 328.

In March 2022, the Court entered summary judgment in favor of UTC on all six of the claims brought by RareGen, and six of the seven claims brought by Sandoz. Dkt. Nos. 382, 383. RareGen was dismissed from this action, as were all of RareGen's and Sandoz's antitrust and state law tort claims and any related requests for permanent injunctive relief, compensatory damages, treble damages, or attorneys' fees. Dkt. Nos. 382, 383. Notably, Plaintiffs' damages expert, Dr. Anupam Jena, initially estimated damages for the antitrust (Counts I, II), unfair trade practices (Counts III, IV), and tortious interference (Count VI) claims at $137.2 million. Dkt. No. 327, Attachment No. 9, Exhibit 209, Excerpts of Dr. Anupam Jena Expert Report dated May 28, 2021 ("Jena Report") ¶¶ 232–241. Moreover, Plaintiffs sought treble damages on the four antitrust claims (Counts I, II, III, IV),

5

which increased the total amount claimed to $411.6 million. Dkt. No. 178 at p. 34. Dr. Jena also estimated that damages for the North Carolina unfair trade practices claim (Count V) were $294.3 million. Jena Report ¶¶ 247–49. By prevailing at summary judgment on all claims other than Sandoz's contract claim, UTC defeated many hundreds of millions of dollars in claimed damages and knocked RareGen out of the case completely. Dkt. Nos. 382, 383.

The Court held a three-day damages trial on Sandoz's breach-of-contract claim in early 2024. Dkt. No. 445 at p. 65; Dkt. Nos. 482–84. On November 1, 2024, the Court entered judgment in favor of UTC on Counts I–VI (the antitrust and other claims on which UTC had prevailed) and judgment in favor of Sandoz on Count VII (the breach-of-contract claim). Dkt. Nos. 510, 511. The Court awarded Sandoz a principal amount of $61,643,251 in damages for breach of contract—a small fraction of the many hundreds of millions in compensatory damages, treble damages, and attorneys' fees that Plaintiffs initially sought and less than 40% of the $168.4 million in breach-of-contract damages that Sandoz sought at trial.

On November 4, 2024, UTC timely filed its post-trial motion to stay execution of the judgment pending appeal without bond. Dkt. No. 509. The Court entered an Order denying UTC's post-trial motion to stay execution of the judgment pending appeal without bond on December 6, 2024. Dkt. Nos. 526, 527. As the prevailing party on all of RareGen's claims and the vast majority of Sandoz's claims, UTC

timely files this Motion to tax costs within 30 days of the Court's December 6, 2024 Order on UTC's last timely-filed post-trial motion pursuant to Local Civil Rule 54.1(a).[1]

## ARGUMENT

**I.   UTC Is Overwhelmingly the Prevailing Party in This Action, and Therefore Is Entitled to Costs.**

Because UTC prevailed on the antitrust and tort claims that drove this litigation—including all claims asserted by Plaintiff RareGen and six of the seven claims asserted by Plaintiff Sandoz—and the judgment on Sandoz's recently added breach-of-contract claim resulted in a fraction of the relief sought, UTC is entitled to costs as "prevailing party" under Federal Rule of Civil Procedure 54(d).

In determining when a party is the "prevailing party" under Rule 54, courts "refuse to give conclusive weight to the form of the judgment" but "look to the substance of the litigation's outcome." *Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir. 1979). "This determination is fact-specific," *Tyler v. O'Neill*, 112 F. App'x 158, 162 (3d Cir. 2004), and must be made "on the basis of the 'circumstances and equities' of each case," *Lacovara v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

---

[1] As discussed below, UTC respectfully requests in the alternative that consideration of any motions for costs be deferred until the parties' cross-appeals have concluded. *See, e.g.*, *Dzielak v. Whirlpool Corp.*, 2021 WL 4059503, at *1 (D.N.J. Jan. 6, 2021) (administratively terminating taxation motions without prejudice to renewal post-appeal).

102 F.R.D. 959, 961 (E.D. Pa. 1984) (citation omitted). Indeed, "the district court retains discretion to award costs to a party who, though losing on some claims, substantially prevails in the case as a whole." *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 28 (1st Cir. 2014). "Substance ought to triumph over form, and a mixed result does not preclude the trial court from awarding costs to the party whom it reasonably determines carried the day." *Id.* at 28–29.

The Supreme Court has "held that a party can be deemed a prevailing party even though it prevailed on some claims and lost on others, where there are 'distinctly different claims for relief that are based on different facts and legal theories,' and the court has treated those unrelated claims 'as if they had been raised in separate lawsuits.'" *Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care, Inc.*, 2017 WL 4391735, at *16 (D. Del. Oct. 3, 2017) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)). Thus, "both plaintiff and defendant can be prevailing parties and both can recover [costs] in a single suit involving multiple unrelated claims." *Id.*[2]

---

[2] Although the Supreme Court clarified this test in the context of attorneys' fees under 42 U.S.C. § 1988 rather than costs under Rule 54, the Third Circuit has determined that the "use of the same test [for purposes of attorneys' fees and costs] will appropriately simplify the litigation of disputes concerning costs." *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 926 (3d Cir. 1985).

Here, UTC is entitled to costs as prevailing party based on its successful defense of all of Plaintiff RareGen's claims, six of the seven claims asserted by Plaintiff Sandoz, and the vast majority of the relief sought in this action. In litigating this action for more than five years, the parties expended most of their efforts on Plaintiffs' motion for a preliminary injunction and their related demands for a permanent injunction and many hundreds of millions of dollars in relief on antitrust and tort claims, on which UTC prevailed. They expended a small fraction of time on Sandoz's more recently asserted breach-of-contract claim, and on the three-day damages trial on that claim which resulted in less than 40% of the breach-of-contract damages Sandoz sought.

Accordingly, this case is analogous to *Tyler v. O'Neill*, in which the Third Circuit affirmed a ruling that "appropriately taxed costs in favor of a defendant" given the defendant's "success in defending against [the plaintiff's] much larger claims for damages." 112 F. App'x at 161, 163. In that case, the defendant's loss on a counterclaim with "limited scope" did not affect the defendant's entitlement to costs, because "where a defendant successfully defends against a plaintiff's substantial claims and judgment is entered accordingly, the defendant is generally considered the prevailing party for purposes of Rule 54(d)(1)." *Id*. at 161; *see also Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983) (determining defendant was prevailing party after it "successfully repelled

9

[plaintiff's] attempt to obtain money damages for alleged infringement on four patents and an injunction against (or royalty payments for) alleged future infringement").

Likewise, in *Lacovara v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the district court appropriately taxed costs in favor of a defendant that successfully defended a plaintiff's claims but lost on a counterclaim, because while "the defendant's [unsuccessful] counterclaim was limited to $4,494," the plaintiff's complaint "sought over $80,000." 102 F.R.D. at 961.

This reasoning has also been endorsed by another circuit court. In *Reel v. Arkansas Department of Correction*, the Eighth Circuit found the defendants to be the prevailing parties for purposes of attorney's fees and costs after they successfully defended against most of the plaintiff's claims. 672 F.2d 693, 697 (8th Cir. 1982). In reaching this conclusion, the court looked to the "substance of the litigation's outcome" and determined that the plaintiff's "limited success in the district court does not make him a prevailing party under § 1988." *Id.* at 696 (citing *Ross*, 598 F.2d 1312); *see also Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 926 (3d Cir. 1985) (affirming that "the test for prevailing party status under Rule 54(d)" is "the same as the test for prevailing party status under 42 U.S.C. § 1988."). The two claims on which the plaintiff prevailed were not "substantial" enough to deny the defendants prevailing party status. *Id.* at 697.

As *Tyler*, *Lacovara*, and *Reel* illustrate, UTC is entitled to prevailing party status under Rule 54 given the extent of its success in defending against Plaintiffs' claims and relief sought, and is thus entitled to recover appropriate costs.

## II. UTC Seeks Appropriate Costs Related to Successfully Defending Plaintiffs' Non-Contract Claims.

28 U.S.C. § 1920 authorizes recovery of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" and "[f]ees and disbursements for printing and witnesses." 28 U.S.C. § 1920(2)–(3). Consistent with the statute, UTC seeks to recover **only** such costs for the subset of depositions that: (1) occurred during the preliminary injunction phase prior to Sandoz ever asserting the breach-of-contract claim upon which it later prevailed; or (2) were cited by UTC in its successful summary judgment briefing, in which UTC prevailed on *all* of RareGen's claims and 85% of Sandoz's claims.

### A. Fees for Deposition Costs.

A prevailing party can recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," 28 U.S.C. § 1920(2), or was "reasonably necessary" for the case, *Burks v. City of Phila.*, 1998 WL 351705, at *4 (E.D. Pa. 1998); *see also Marcario v. Pratt & Whitney Can., Inc.*, 1995 WL 649160, at *1 (E.D. Pa. 1995) ("Pursuant to § 1920(2), a party may recover costs for deposition transcripts if the depositions were reasonably necessary to the case or to preparation for trial."). Section 1920 and Local Civil Rule 54.1(g)(7) have "been

11

interpreted as permitting the taxation of costs for depositions used in deciding summary judgment motions." *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 138 (3d Cir. 1999). Although it is "reasonable to assume" that a deposition cited or referred to in a motion for summary judgment was "necessarily obtained for use in the case," a prevailing party can request for any deposition costs so long as they establish a "particularized basis of necessity" to adjudicating the claims on which they prevailed at the summary judgment stage. *Pharm. Res., Inc., v. Roxane Laboratories, Inc.*, 2008 WL 2951173, at *3–4 (D.N.J. 2008) (noting that the Third Circuit considers "deposition transcripts used in summary judgment motions [to be] 'necessarily obtained' within the meaning of [Section 1920]" (citing *In re Baby Food Antitrust Litig.*, 166 F.3d at 138)).

Here, UTC seeks $52,022.77 in deposition costs, which consists of two categories of such costs. Orlofsky Decl. ¶¶ 4–6, Exhibit A.

First, UTC seeks to recover the taxable costs for depositions and associated costs from the preliminary injunction phase, totaling $27,683.65.[3] Orlofsky Decl.

---

[3] The deposition and associated costs that UTC seeks to recover from the preliminary injunction phase during 2019 are only for the costs of the transcript and the reporter. Orlofsky Decl. ¶ 5; *see also Warner Chilcott Laboratories Ir. Ltd. v. Impax Laboratories, Inc.*, 2013 WL 1876441, at *6 (D.N.J. Apr. 18, 2013) (explaining that "recoverable costs under § 1920(2) include the cost of reporters in addition to the cost of the preparation of transcripts, L. Civ. R. 54.1(g)(7), and therefore, the Clerk taxes all fees for original transcripts and reporter appearance").

¶¶ 4–5, Exhibit A. Importantly, UTC only seeks to recover deposition and associated costs permitted by 28 U.S.C. § 1920(2). Therefore, UTC only seeks to recover deposition and associated costs for the original transcript and court reporter appearance fees incurred during the preliminary injunction phase. *See Warner Chilcott Laboratories Ir. Ltd. v. Impax Laboratories, Inc.*, 2013 WL 1876441, at *6 (D.N.J. Apr. 18, 2013). Unlike Sandoz,[4] UTC does not seek to recover costs for expedited delivery, Realtime, rough transcripts, or shipping and handling costs, which "are not among those listed in § 1920 and are considered to be for the convenience of counsel." *Id.*

Second, UTC seeks to recover the taxable costs for depositions cited in UTC's successful summary judgment briefs that resulted in the Court entering judgment in favor of UTC on all of RareGen's claims and 85% of Sandoz's claims, totaling $24,339.12.[5] Orlofsky Decl. ¶¶ 4, 6, Exhibit A. Again, UTC only seeks to recover

---

[4] *See* Dkt. No. 524-1 at pp. 3–5 (Sandoz's Mot.); *id.* at pp. 10–15 (Appendix – Deposition Costs); Dkt. No. 524-2 at ¶ 6 (Kent Decl.). Sandoz impermissibly seeks to recover deposition costs for expedited delivery, Realtime, rough transcripts, and shipping & handling—none of which are permitted under Section 1920(2). *Warner Chilcott*, 2013 WL 1876441, at *5–6.

[5] The deposition and associated costs that UTC seeks from the summary judgment phase are for the costs of the transcript, the reporter, remote text connection, remote video connection, and/or the remote hot seat exhibit/video capture, because these costs were not for the convenience of counsel but rather were necessary to the case as these depositions occurred during the height of the COVID-19 pandemic, which required depositions to be conducted remotely. Orlofsky Decl. ¶ 6. Importantly, the costs for remote text connection, remote video connection, and/or remote hot seat

13

deposition and associated costs permitted under Section 1920. UTC does not seek to recover taxable costs for depositions of Kevin Gray and Dr. Anupam Jena from the post-preliminary injunction phase, even though their depositions were cited in UTC's summary judgment briefs, because those witnesses testified at the three-day damages trial on Sandoz's contract claim.

### B. Fees for Witnesses.

A prevailing party can recover "[f]ees for . . . witnesses." 28 U.S.C. § 1920(3); *see also* L. Civ. R. 54.1(g)(1); L. Civ. R. 54.1(g)(7) ("Fees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial."). Witnesses shall be paid $40 per day for each day of attending a deposition. 28 U.S.C. § 1821(b).

As set forth in the Orlofsky Declaration and the chart below, UTC seeks reimbursements for the per diem allowance for the requested time periods for each of the following witnesses whose depositions UTC defended, in the total amount of $840.00. *See* Orlofsky Decl. ¶ 7.

| Date | Witness | Proceeding | Amount |
|---|---|---|---|
| 07/19/2019 | Rhodes, Beth | Deposition | $40.00 |
| 07/26/2019 | Watson, Jay | Deposition | $40.00 |

---

exhibit/video capture were *not* for the deposition videotapes, because in this District, courts will not award costs for the deposition videotapes *and* written transcripts of the same witnesses. *See Warner Chilcott*, 2013 WL 1876441, at *5.

| Date | Name | Type | Amount |
|---|---|---|---|
| 08/05/2019 | Benkowitz, Michael 30(b)(1) & 30(b)(6) | Deposition | $40.00 |
| 08/06/2019 | Gray, Kevin 30(b)(6) | Deposition | $40.00 |
| 08/07/2019 | Nainani, Vijay | Deposition | $40.00 |
| 09/22/2019 | Waxman, Aaron | Deposition | $40.00 |
| 09/25/2019 | Talpade, Dnyanesh | Deposition | $40.00 |
| 10/02/2019 | Gaier, Eric | Deposition | $40.00 |
| 03/19/2021 | Burkemper, Damian | Deposition | $40.00 |
| 03/23/2021 | Ariniegas, Alejando | Deposition | $40.00 |
| 03/24/2021 | Edgemond, James | Deposition | $40.00 |
| 03/31/2021 | Jackson, Chip | Deposition | $40.00 |
| 04/01/2021 | Rothblatt, Martine | Deposition | $40.00 |
| 04/14/2021 | Bottorff, Greg | Deposition | $40.00 |
| 07/28/2021 | Gaier, Eric | Deposition | $40.00 |
| 07/29/2021 | Talpade, Dnyanesh | Deposition | $40.00 |
| 08/03/2021 | Lasek, RJ | Deposition | $40.00 |
| 08/12/2021 | Jones, Patrick | Deposition | $40.00 |
| 08/13/2021 | Shafer, Lisa | Deposition | $40.00 |
| 08/17/2021 | Scaccia, Salvador | Deposition | $40.00 |
| 12/16/2021 | Edgemond, James | Deposition | $40.00 |
| | | **TOTAL** | **$840.00** |

### III. In the Alternative, the Clerk Should Defer Ruling on Costs Until the Parties' Cross Appeals Are Decided.

Shortly after the Court entered judgment, the parties filed cross-appeals related to the Court's summary judgment and trial rulings. As an alternative to awarding costs now, and in light of the potential that the Third Circuit's ruling on those appeals may reconfigure which party or parties prevailed on which counts, judicial efficiency would be best served by deferring ruling on costs until the litigation comes to its ultimate conclusion.

Accordingly, in the alternative to awarding costs now, UTC requests deferred consideration or a stay. Such requests "'are commonplace and the courts have handled them in various ways.'" *Dzielak v. Whirlpool Corp.*, 2021 4059503, at *1 (D.N.J. Jan. 6, 2021) (quoting *Care One Mgmt., LLC v. United Healthcare Workers E., SEIU 1199*, 2020 WL 3482134, at *4 (D.N.J. June 26, 2020)). In *Dzielak*, the Court administratively terminated the taxation motions without prejudice to renew post-appeal. *Id.* Similarly, UTC respectfully requests that the Clerk either administratively terminate or defer consideration of the parties' taxation motions without prejudice to the parties' ability to renew them after the conclusion of their appeals.

## **CONCLUSION**

For the foregoing reasons, UTC respectfully requests that the Clerk award UTC costs against Sandoz and RareGen in the amount of $52,862.77 or in the alternative, administratively terminate or defer consideration of the parties' taxation motions without prejudice for the parties to renew them after the conclusion of their appeals.

Dated: January 6, 2025

/s/ Stephen M. Orlofsky

| | |
|---|---|
| **BLANK ROME LLP** | **WILLIAMS & CONNOLLY LLP** |
| *A Pennsylvania LLP* | Edward J. Bennett *(pro hac vice)* |
| Stephen M. Orlofsky | Edward C. Barnidge *(pro hac vice)* |
| *New Jersey Resident Partner* | Jonathan B. Pitt *(pro hac vice)* |
| Michael R. Darbee | Adrienne E. Van Winkle *(pro hac vice)* |
| 300 Carnegie Center, Suite 220 | 680 Maine Avenue S.W. |
| Princeton, NJ 08540 | Washington, DC 20024 |
| Telephone: (609) 750-2646 | Telephone: (202) 434-5083 |
| Facsimile: (609) 897-7286 | Facsimile: (202) 434-5029 |
| SOrlofsky@BlankRome.com | EBennett@wc.com |
| MDarbee@BlankRome.com | EBarnidge@wc.com |
| | JPitt@wc.com |
| | AVanWinkle@wc.com |

*Attorneys for Defendant United Therapeutics Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

Dated: January 6, 2025                                        */s/ Stephen M. Orlofsky*

                                                              *Attorney for UTC*